1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONNIE F. MORGAN,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:08cv1275 GSA<br><br>ORDER REGARDING PLAINTIFF'S<br>SOCIAL SECURITY COMPLAINT<br><br>(Doc. 21) |

## BACKGROUND

Plaintiff Connie F. Morgan ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

///

///

///

---

[1] Both Plaintiff and Defendant consented to the jurisdiction of the United States Magistrate Judge Gary S. Austin on September 5, and 24, 2009, respectively. (Docs. 13 and 14).

1

## FACTS AND PRIOR PROCEEDINGS[2]

2   Plaintiff filed her initial application for Supplemental Security Income ("SSI") on March

3   26, 2004, alleging disability since March 1, 2003.  AR 58-62.  Her application was denied

4   initially on December 3, 2004, and on reconsideration on April 25, 2005.  A.R. 28-32; 34-38.

5   Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 7.  ALJ Bert C.

6   Hoffman, Jr. held a hearing on October 31, 2006, and denied benefits on February 12, 2007.  AR

7   11-18; 364-392.  On May 22, 2008, the Appeals Council denied review.  AR 4-6.

8   Hearing Testimony

9   _____ALJ Hoffman held a hearing on October 31, 2006, in Fresno, California.  AR 366.

10  Plaintiff appeared with her attorney, Ms. Melissa Proudian.  AR 366.  At the time of the hearing,

11  Plaintiff was twenty eight years old.  She was five feet nine inches tall and weighed three

12  hundred and fifty pounds.  AR 367.  Her normal weight is one hundred and forty-five pounds,

13  however, she had recently gained weight due to the side effects of her medications.  AR 367.

14  Plaintiff is divorced and does not have any children.  AR 368.  She is currently living with her

15  aunt and her mother.  AR 386.  Plaintiff has completed the ninth grade. AR 370. She attempted

16  to obtain a GED but was unsuccessful.  AR 370.

17  Plaintiff worked at McDonalds in May 2001 for approximately three months but stopped

18  working because she was unable to concentrate.  She last worked for her cousin in 2003 and

19  2004 delivering food but was fired when she got into a fight with another driver.  AR 372.  In

20  2003, Plaintiff was also convicted of forgery and was incarcerated for seven months in jail.  AR

21  375; 388.  Plaintiff was taking drugs when she was fired, as well as at the time of her conviction.

22  AR 372; 375.  Plaintiff last took drugs in October 2005.  AR 372.  Her drug of choice is crack

23  cocaine, however she has also used methamphetamine.  AR 384; 387.

24  Plaintiff is unable to work currently because she suffers from anxiety attacks and she has

25  gotten violent with others.  AR 373.  She has been receiving mental health treatment and was

26  diagnosed with massive depression, post traumatic stress disorder, and bipolar disorder with

27

28

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

psychotic features.  AR 373.  She is being treated by Dr. Ghermay where she was seen once every two or three months.  AR 373.  She currently takes Seroquel, Neurontin, and Paxil.  AR 374.  When taking the medications, Plaintiff is unable to function because the medications make her dizzy and drowsy.  AR 374.  She sleeps all day and all night. AR 374.  Plaintiff stated that the medications help her with most of her symptoms because by sleeping most of the day she doesn't fight with people.  AR 375.  However, Plaintiff can't function without her medications.  AR 374.  If she does not take her medications, her outbursts become more severe.  AR 386.  At times, she does not take her medications because she runs out and it is hard to get to see the doctor.  AR 387.  It is also difficult to fill her prescriptions because she does not have health insurance and it is hard to find a pharmacy that will accept county insurance.  AR 387.

Plaintiff suffers from violent outbursts.  AR 376.  She gets angry and loses control when people talk to her in a demanding voice or with an attitude.  AR 384-385.   Plaintiff was sent home to California from her aunt's house in Mississippi because she got into a fight with her cousin.  AR 385.  She was not taking her medication at the time. AR 385.  Her last violent outburst occurred approximately one week ago when she got into a fistfight with her sister.  AR 376.

Plaintiff tries to avoid people by isolating herself.  AR 376.  For the past ten years, she grocery shops at night to avoid crowds.  AR 376-377.  She currently has no friends but has had friends in the past.  AR 377.  Most of her previous friends were drug addicts so she no longer associates with them.  AR 377.  However, Plaintiff attends hockey games. AR 377.  She has seasons tickets after winning them in a contest.  AR 377-378.  She also enjoys reading and doing crossword puzzles.  AR 383.

Plaintiff is depressed four out of seven days a week.  AR 379.  When she is depressed her mind races and she is unable to concentrate.  AR 383.   She gets very tired and does not want to do anything.  AR 380.  She can only concentrate for approximately forty-five minutes and then she loses interest. AR 383.   She has thoughts of suicide at least three to four times a month.  AR 381.  On November 23, 2005, she was hospitalized for one night when she tried to kill herself

1  because an on-line relationship did not work out.  AR 381-382.  Her doctor does not want her to
2  live alone because of her suicidal tendencies.  AR 389.

3      Plaintiff does dishes about eighty percent of the time but her mother does her laundry
4  because Plaintiff does not have the patience.  AR 380.  Plaintiff is able to drive a car and has a
5  car at her disposal but only drives once a week because of the side effects from her medication.
6  AR 369-370.

7      Medical Record

8  _____Plaintiff was a patient at University Medical Center from March 2002 until April 2004 in
9  the emergency room for minor illnesses and a physical exam.  AR 128.  Plaintiff was also seen by
10 Dr. Roy Lichtenstein, M.D., from March 2004 through March 2006 for regular gynecological
11 exams and treatment.  AR 243-260.

12     In addition to the above medical treatment, Plaintiff received treatment for her
13 psychological conditions.  Progress notes for Adult Health Center from the Fresno County
14 Mental Health Department indicate that Plaintiff received ongoing psychiatric treatment from
15 March 3, 2003 until November 2004.  AR 152-215.

16     Plaintiff was seen on April 25, 2003, for crisis intervention while she was incarcerated
17 due to depression, as well as for an assessment for dangerousness to herself. AR 215. At that
18 time, Plaintiff reported that she had mood swings, suffered from nightmares, and was hearing
19 voices.  AR 215.  Although Plaintiff reported trying to hurt herself in the past, she was not a
20 danger to herself at the time.  AR 215.  Plaintiff was referred for a women's group for group
21 therapy.  AR 215.  Plaintiff was diagnosed with post traumatic stress disorder, depression not
22 otherwise specified, and polysubstance abuse.  AR 211.

23     On June 2, 2003, Plaintiff had stabilized and no psychosis was noted. AR 211. Although
24 Plaintiff complained that she was only sleeping a few hours a night and suffered from migraine
25 headaches, she was alert, responsive and oriented times four.  AR 207. Plaintiff was released
26 from jail on August 1, 2003. AR 330; 340

27     Upon her release, Plaintiff was evaluated on October 24, 2003, at Fresno County Human
28 Services System, Adult Services.  AR 201.   She was diagnosed with major depression, recurrent,

4

1  severe with psychosis, post traumatic stress disorder, polysubstance dependence in early

2  remission, and personality disorder.  AR 201.  It was noted that Plaintiff was highly agitated and

3  had been off her medications for one and a half months.  AR. 189.  The examiner assessed

4  Plaintiff's Global Assessment of Functioning ("GAF") at 50.[3]  AR. 192, 337.

5        Plaintiff was rearrested for a probation violation on November 10, 2003.  She was

6  evaluated by the Department of Adult Services, Jail Psychiatric Services after her arrest on

7  November 22, 2003. AR 330-331.  Plaintiff was assessed at a low risk with no desire to harm

8  herself.  AR 330.  Plaintiff was diagnosed with post traumatic stress disorder, depression not

9  otherwise specified, and polysubstance dependance in early remission.  Plaintiff was given a

10  GAF score of  45. AR 331.   She had been sentenced and was scheduled to be incarcerated until

11  January 26, 2004.  Plaintiff was released from custody on an unknown date.

12        On December 3, 2004, Dr. Archimedes Garcia, M.D., a non-examining state agency

13  psychiatrist found that Plaintiff was not significantly limited in her ability to: 1) remember

14  locations and work procedures, 2) understand and remember long-term instructions, 3) carry out

15  very short and simple instructions, 4) maintain concentration for extended periods, 5) perform

16  activities within a schedule, 6) sustain an ordinary routine without special supervision, 7) work in

17  coordination with others without being distracted, and 8) to make simple work-related decisions.

18  AR. 216.  He also found no significant limitations in the areas of social interaction, and adaption.

19  AR 217.  Dr. Garcia did note mild limitations in Plaintiff's ability to remember and carry out

20  detailed instructions.  AR 218.  Based on the these findings, Dr. Garcia opined that Plaintiff was

21  capable of: 1) completing simple repetitive tasks for two-hour intervals, 2) finishing a normal

22  workday, 3) maintaining regular attendance, 4) would not require supervision, 5) that she was

23  capable of working with coworkers or the general public and 6) would not have difficulty

24

25

26      [3]  The Global Assessment of Functioning or "GAF" scale reflects a clinician's assessment of the
27  individual's overall level of functioning.  *American Psychiatric Association, Diagnostic & Statistical Manual of
   Mental Disorders* 30 (4th ed. 2000) ("DSM IV").  A GAF between 41 and 50 indicates "[serious symptoms (e.g.
   suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or
28  school functioning (e.g. no friends, unable to keep a job).  DSM- IV at 34.

1   adapting to ususal work.  AR 218.  These findings were reviewed and affirmed by Dr. Murillo,

2   M.D. a non examining state agency doctor on April 11, 2005.  AR 225.

3         On March 22, 2004, Plaintiff was evaluated by treating physician Petros Ghermay, M.D.,

4   at the Fresno County Health Services Agency, Mental Health Department.  Dr. Ghermay noted

5   Plaintiff's history of mental illness, substance abuse, and incarceration for fraud.  AR 168-170.

6   He diagnosed Plaintiff with post-traumatic stress disorder, polysubstance abuse in remission,

7   borderline personality disorder, and a possible mood disorder.  AR. 168.  He assigned Plaintiff a

8   GAF of 45.  AR. 168. At that point, Plaintiff noted that her prescribed medications were

9   working.  AR. 170.  Dr. Ghermay continued Plaintiff's medications.  AR 168.  Subsequent visits

10  through September indicate that Plaintiff's condition was unchanged and that she should

11  continue with her medications. AR 159, 160.

12        On October 20, 2004, Plaintiff informed Dr. Ghermay that she had been in Mississippi

13  for about a month and that she had not taken her medications.  AR 153.  Dr. Ghermay noted

14  Plaintiff's depression, anxiety, and mood swings were high.  AR 153.  Plaintiff's medications

15  were resumed.  AR 153.  By November 19, 2004, Plaintiff reported she was doing "alright" and

16  Dr. Ghermay noted that Plaintiff's condition was stable.  AR 224. Plaintiff was prescribed

17  Seroquel, Paroxetine, and Nuerontin.  AR 290.

18        On January 28, 2005, Dr. Ghermay noted that Plaintiff's symptoms were controlled on

19  the medications and she exhibited no suicidal or homicidal tendencies.  AR 222.  On April 13,

20  2005, Plaintiff was seen for a prescription refill because she had been out of medications for one

21  and a half weeks.  AR 293.  Plaintiff indicated that she had gotten engaged and she noted that "all

22  of the medications together help control me."  AR 293.  On October 5, 2005, Plaintiff indicated

23  that she was sleeping more and the medications were "just right now."  AR 288.

24        On December 9, 2005, Plaintiff reported that they had changed her medications in

25  Sacramento the day before Thanksgiving and she tried to commit suicide.  Plaintiff reported that

26  she had broken up with her boyfriend and that she had taken all four pills she had left.   AR 287.

27  Plaintiff was taken to the hospital after 911 was called.  AR 287.  Plaintiff indicated that she was

28  feeling better after leaving her boyfriend and that her medications had been changed.  AR 287.

1   Dr. Ghermay's notes reflect Plaintiff's continual improvement while she was taking her

2   medications through the date of the last progress report of August 4, 2006.  AR 280, 282, 283,

3   285.

4            ALJ's Findings

5            The ALJ determined that Plaintiff had not engaged in substantial gainful activity since

6   March 1, 2003.  AR 13.  Although the ALJ determined that Plaintiff suffered from the severe

7   impairment of post traumatic stress disorder, he nonetheless found that this severe impairment did

8   not meet or equal any listing impairments resulting in a disability finding.  A.R. 14 .  Based on his

9   review of the medical evidence, the ALJ determined that Plaintiff retained the residual functional

10  capacity ("RFC") to perform a full range of work at all exertional levels but with limited public

11  contact.  AR 14.  Considering that functional limitation, the ALJ found that Plaintiff was unable

12  to perform any past relevant work. AR 17.  Applying the Medical-Vocational Guidelines at 20

13  C.F.R. Part 404, Subpt. P, App. 2, the ALJ determined that Plaintiff was capable of performing a

14  significant number of jobs in the national economy.  A.R. 18.   Based on these factors, the ALJ

15  concluded that Plaintiff was not disabled within the meaning of the Act. AR 18.

16                          **SCOPE OF REVIEW**

17            Congress has provided a limited scope of judicial review of the Commissioner's decision

18  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

19  the Court must determine whether the decision of the Commissioner is supported by substantial

20  evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"

21  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

22  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

23  reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.

24  The record as a whole must be considered, weighing both the evidence that supports and the

25  evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995

26  (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the

27  proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court

28  must uphold the Commissioner's determination that the claimant is not disabled if the Secretary

                                    7

1  applied the proper legal standards, and if the Commissioner's findings are supported by

2  substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

3  Cir. 1987).

4  **<u>REVIEW</u>**

5      In order to qualify for benefits, a claimant must establish that he or she is unable to engage

6  in substantial gainful activity due to a medically determinable physical or mental impairment

7  which has lasted or can be expected to last for a continuous period of not less than 12 months. 42

8  U.S.C. § 1382c (a)(3)(A).  A claimant must show that he or she has a physical or mental

9  impairment of such severity that she is not only unable to do her previous work, but cannot,

10 considering his or her age, education, and work experience, engage in any other kind of

11 substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882

12 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v.*

13 *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

14     In an effort to achieve uniformity of decisions, the Commissioner has promulgated

15 regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

16 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f).  Applying this process in this case, the ALJ found that

17 Plaintiff: (1) had not engaged in substantial gainful activity since March 1,2003; (2) did have an

18 impairment, post traumatic stress disorder, that is considered "severe" based on the requirements

19 in the Regulations (20 CFR §§ 416.920 (c)); (3) did not have an impairment or combination of

20 impairments which meets or equals one of the impairments set forth in 20 CFR Part 404, Subpart

21 P, Appendix 1(20 CFR §§ 416.920(d), 416.925 and 416.926); (4) had a residual functional

22 capacity to perform a full range of work at all exertional levels but with limited public contact;

23 and (5) that she could perform jobs that exist in significant numbers in the national economy. AR

24 13-18.

25     In reaching these conclusions, the ALJ found that the objective findings failed to provide

26 support for the Plaintiff's allegations of disabling symptoms and limitations.  AR 15.  Although

27 Plaintiff's condition could be expected to produce some symptoms, Plaintiff was not entirely

28 credible regarding the intensity, persistence, and limiting effects of those symptoms.  AR 16.

1  Plaintiff contends that the ALJ's decision is erroneous because he improperly rejected her

2  testimony and did not properly evaluate her ability to perform activities of daily living.

3                                    **DISCUSSION**

4          Plaintiff argues that in rejecting her testimony, the ALJ relied upon the fact that the

5  objective medical evidence did not support the level of limitation Plaintiff described, and that

6  Plaintiff's ability to perform her daily activities are inconsistent with disability.  However, in

7  evaluating her activities of daily living, the ALJ failed to analyze how Plaintiff's ability to do the

8  daily activities he relied upon prevents her from performing continuous full-time work.  Because

9  it is impermissible to reject subjective pain solely on the basis of objective medical evidence, the

10 ALJ did not offer clear and convincing evidence to reject Plaintiff's testimony.  Plaintiff relies

11 upon *Bunnell v. Sullivan*, 947 F. 2d  341 (9th Cir. 1991) in support of her position. A review of

12 the record demonstrates that Plaintiff's arguments are misplaced.

13         The ALJ is required to make specific findings assessing the credibility of plaintiff's

14 subjective complaints.  *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991).  "An ALJ is

15 not 'required to believe every allegation of disabling pain' or other non-exertional impairment,"

16 *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citation omitted).  In rejecting the complainant's

17 testimony, "the ALJ must identify what testimony is not credible and what evidence undermines

18 the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) quoting *Varney v.*

19 *Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)).

20         In making this determination, the ALJ conducts a two-step analysis to assess subjective

21 testimony.  Under step one, the claimant "must produce objective medical evidence of an

22 underlying impairment" or impairments that could reasonably be expected to produce some

23 degree of symptom. *Tommasetti v. Astrue*, 533 F. 3d at 1039.  If the first step is met and there is

24 no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the

25 severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.*

26 Factors the ALJ may consider in weighing a claimant's credibility include "(1) ordinary techniques

27 of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements

28 concerning the symptoms, and other testimony by the claimant that appears less than candid; (2)

1   unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of

2   treatment; and (3) the claimant's daily activities." *Id.* citing *Smolen v. Chater*, 80 F. 3d 1273 (9th

3   Cir. 1996). If the ALJ's finding is supported by substantial evidence, the court "may not engage in

4   second-guessing." *Thomas v. Barnhart*, 278 F.3d at 959.

5       In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the

6   pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's

7   subjective complaints:

8           An ALJ is not "required to believe every allegation of disabling pain" or other
        non-exertional impairment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989).
9       However, to discredit a claimant's testimony when a medical impairment has been
        established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" *Morgan,*
10      *169 F.3d at 599* (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why
        the [claimant's] testimony is unpersuasive." *Id.* Where, as here, the ALJ did not find
11      "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the
        claimant's testimony must be clear and convincing." *Id.*

12          Social Security Administration rulings specify the proper bases for rejection of a
13      claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be
        supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at
14      57860 ("Although Social Security Rulings do not have the same force and effect as the
        statute or regulations, they are binding on all components of the Social Security
15      Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see*
        *Daniels v. Apfel*, 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at
16      step three of the disability determination was contrary to agency regulations and rulings
        and therefore warranted remand). Factors that an ALJ may consider in weighing a
17      claimant's credibility include reputation for truthfulness, inconsistencies in testimony or
        between testimony and conduct, daily activities, and "unexplained, or inadequately
18      explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*, 885
        F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

19      Here, in evaluating Plaintiff's functional residual capacity, the ALJ noted that none of the

20  Plaintiff's examiners imposed any restrictions on her ability to function due to her mental

21  impairment, however, he also relied on other factors. AR 16. He stated the following:

22          Lastly, after considering the evidence of the record, I find that the claimant's
23      medically determinable impairment could reasonably be expected to produce the
        alleged symptoms, but that the claimant's statements concerning the intensity,
24      persistence and limiting effects of these symptoms are not entirely credible. At the
        hearing, the claimant testified that she had a driver's license and does drive;
25      however, the record reveals that she stated she does not drive and uses public
        transportation. She testified that she last used drugs in October 2005. She testified
26      that she sees her doctor at [m]ental [h]ealth once every one to three months and
        attends AA meetings once every two weeks. She testified that the medications
27      help and when taking them she will not fight with people and does not have violent
        outbursts. The claimant testified that she is unable to be around people and avoids

28

1   crowds; however, she attends [h]ockey games on what appears to be a regular
    seasonal bases, even so far as following the team to other cities for games.
2   AR 16.

3       Although Plaintiff argues that the ALJ improperly rejected her testimony because he failed

4   to explain how her activities of daily living impact on her ability to work, a review of the record

5   demonstrates that the ALJ properly rejected Plaintiff's subjective complaints.  Contrary to

6   Plaintiff's assertions, the ALJ relied upon factors other than Plaintiff's activities of daily living to

7   discount her testimony and gave specific, clear and convincing reasons for doing so.  For example,

8   the ALJ noted that Plaintiff had not used drugs since October 2005, that she regularly attended her

9   physician's appointments, and that she participated in AA meetings once every two weeks. AR

10  16.   The ALJ further relied upon the fact that Plaintiff stated she does not fight with people and

11  does not have violent outbursts when she takes her medications.  AR 16.  Moreover, the ALJ

12  noted that although Plaintiff testified that she is unable to be around people and avoids crowds,

13  she regularly attends hockey games.  AR 16.  This is a valid reason to reject Plaintiff's subjective

14  complaints as this is an inconsistency between her conduct and her testimony.  "  *Fair*, 885 F.2d at

15  603; *Bunnell,* 947 F. 3d at 346-347; *see also Thomas*, 278 F.3d at 958-59.  This is especially true

16  here given that Plaintiff contended that one of the reasons she could not work was due to her

17  violent tendencies toward others. AR 376-377, 384-385.  Finally, notwithstanding rejecting

18  Plaintiff's subjective complaints, the ALJ did recognize Plaintiff's limitation by discounting the

19  state agency doctors' opinions and adapting her residual functional capacity to perform at all

20  exertional levels *but with limited public contact.* AR 14, 16. (emphasis added).

21      Similarly, the Court is not persuaded by Plaintiff's argument that it is unclear that the ALJ

22  found her testimony not credible. Plaintiff argues that the ALJ's credibility finding is inconsistent

23  because on the one hand, the ALJ noted that there was no evidence to contradict her assertions

24  that she stopped working as a result of her mental impairments which precluded her past

25  employment, however, on the other hand, the ALJ later rejects Plaintiff's testimony regarding her

26  ability to work. AR 14, 16.   The Court finds that the ALJ's adverse credibility determination is

27  clear and consistent because the ALJ was examining two different issues-past,versus current

28  ability to work.  Contrary to Plaintiff's contentions, Plaintiff did not establish a current inability to

1  perform regular and continuous full-time work.  The medical record did not establish any such

2  limitation, and the ALJ's rejection of Plaintiff's testimony concerning the subjective effects of her

3  impairments is supported by substantial evidence.

4        It is not the role of the Court to redetermine Plaintiff's credibility *de novo*.  Although

5  evidence supporting an ALJ's conclusions might also permit an interpretation more favorable to

6  the claimant, if the ALJ's interpretation of evidence was rational, as here, the Court must uphold

7  the ALJ's decision where the evidence is susceptible to more than one rational interpretation.

8  *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).  For the reasons stated above, the Court

9  finds that the ALJ set forth sufficient reasons to conclude that he did not arbitrarily discredit

10  Plaintiff's subjective complaints.  Accordingly, Plaintiff's claim must be denied.

11                              **CONCLUSION**

12        Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

13  evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court

14  DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social

15  Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant, Michael

16  J. Astrue, Commissioner of Social Security and against Plaintiff, Connie F. Morgan.

17

18        IT IS SO ORDERED.

19  **Dated:   November 30, 2009**          _____ **/s/ Gary S. Austin** _____
                                    UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28